UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

MYRA S. SEAMAN,                                    Case No. DK 08-06829
                                                   Chapter 11

                  Debtor.

_____/

## MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

        More than seven years after the court confirmed the chapter 11 plan of Myra S. Seaman (the "Debtor"), her former partners and their long-dissolved partnership[1] filed a Motion for Substantial Contribution (ECF No. 279, the "Motion") seeking allowance of an administrative claim for legal fees incurred in the partnership's state court "wind-up" proceedings.  The Former Partners argue that they (and presumably the partnership) made a "substantial contribution" in the Debtor's bankruptcy case under 11 U.S.C. § 503(b)(3)(D) by commencing and prosecuting the wind-up proceedings to a conclusion that resulted in the Debtor's obtaining $200,000.00 from the partnership's assets.  The Debtor, the United States Trustee, the Internal Revenue Service, and the Michigan Department of Treasury all oppose the Motion on multiple grounds.

        After extensive pre-hearing briefing, the court heard oral arguments in Kalamazoo, Michigan, on August 23, 2018.  The parties agreed that the dispute is complex, potentially involving numerous factual questions about the nature or extent of the contribution the Former Partners allegedly made.  Significantly, however, they also agreed the court could decide several threshold issues based upon the parties' arguments and the court's interpretation of (i) the Debtor's Second Amended Second Plan of Reorganization in Chapter 11 (ECF No. 166, the  "Plan"); (ii) the Order Confirming Plan (ECF No. 178, the "Confirmation Order"); and (iii) the Bankruptcy Code, especially 11 U.S.C. § 503.  More specifically, a consensus emerged during the hearing that if the Plan's deadline for filing administrative claims applies to the Former Partners' claims for substantial contribution, or if the Former Partners are not "creditors" within the meaning of § 503(b)(3)(D), the court could deny the Motion without putting the parties to the expense of a full-blown evidentiary hearing.

        Having carefully considered the arguments of counsel, and after reviewing the Plan, the Disclosure Statement, and the applicable provisions of the Bankruptcy Code, the court will deny the Motion.

        The following material facts are not in dispute.  The Former Partners and the Debtor were partners in a Michigan general partnership known as Strevrep Co. that was automatically dissolved

---

[1]  The court will refer to Strevrep Co., James A. Pardoe, and Kent M. Maurer collectively as the "Former Partners."

upon the filing of the Debtor's bankruptcy petition on August 4, 2008.  The Former Partners, though not listed as creditors in the Debtor's schedules, had notice of the Debtor's bankruptcy case in advance of the bar date for filing claims of non-governmental creditors (March 1, 2010) established by the Order Pursuant to Bankruptcy Rule 3003(c)(3) Fixing Bar Date for Filing Proofs of Claim (ECF No. 91), and they did not file any claims.  Nor, for that matter, did they take any steps to enlarge the deadline for filing their claims.  Similarly, they had notice of these proceedings well before the deadline for filing administrative claims (May 1, 2011) prescribed in the Debtor's Plan.  The court approved the Debtor's First Amended Second Disclosure Statement ("Disclosure Statement," ECF No. 140) on November 10, 2010, and confirmed the Plan on March 31, 2011.

In June 5, 2017, the court granted the Former Partners' motion for permission to sue the Debtor in state court to compel her to participate in winding-up the affairs of Strevrep Co. (ECF No. 263).  Thereafter, they sued her in Calhoun County Circuit Court and eventually settled their dispute, agreeing that the Debtor's share of the partnership's assets and return on her investment was $200,000.00.  This amount is on deposit in the Debtor's counsel's trust account.  The Plan contemplates that the Debtor will use these funds to make payments to creditors under the Plan, starting with the state and federal taxing authorities.

On June 11, 2018, more than seven years after the Plan's deadline for filing administrative claims, the Former Partners filed their Motion seeking allowance of their "substantial contribution" claim in the amount of $145,000.00 as a cost of administration under § 503(b)(3)(D) and (b)(4). As set forth in Exhibit C to the Reply of Movants to Objecting Parties' Opposition to Motion for Substantial Contribution [Dkt. No. 279] (ECF No. 295, the "Reply"), all the expenses for which the Former Partners seek allowance are itemized in invoices from counsel, either Miller, Canfield, Paddock and Stone P.L.C. or Bodman, LLP.  The parties agree that granting the Motion would likely reduce the distribution to the taxing authorities who would otherwise share the $200,000.00 the Debtor derived from the partnership.

The court begins its inquiry with the language of § 503(b)(3)(D) and (b)(4), the federal statutory basis for the Former Partners' supposed priority claim.  Section 503 provides in relevant part as follows:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including --
>
>  . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by --
>
> . . .
>
> > (D) a *creditor*, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a

committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . .

*See* 11 U.S.C. § 503 (emphasis added). If the court grants the Motion, the Former Partners will hold an "administrative expense" claim with top priority under §§ 503(b) and 507(a)(2), priming other lower priority claims. For this reason, the case law is clear that claims under § 503 and the statute itself are to be narrowly construed. *See Mediofactoring v. McDermott (In re Connolly North America, LLC)*, 802 F.3d 810, 816 (6th Cir. 2015) (claims strictly construed, citing *City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.*), 270 F.3d 994, 1000 (6th Cir. 2001)); *In re Alumni Hotel Corp.*, 203 B.R. 624, 630 (Bankr. E.D. Mich. 1996) (statute strictly construed). Moreover, "the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole," and "should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994).

Returning to the parties' arguments, the Debtor, the United States Trustee, and the taxing authorities contend that the Former Partners are not "creditors" and therefore lack standing to seek an award for substantial contribution. They also contend that, even if the Former Partners are creditors, their substantial contribution claim is untimely under the Plan.

On the first point, the objecting parties challenge the Former Partners' status as "creditors" because their debts are not scheduled, they filed no proofs of claim, and despite their knowledge of the pendency of the case, they took no part in it, save for obtaining a determination last year that they could proceed with the partnership's wind-up proceedings in state court and now, filing their Motion. Moreover, they incurred the attorney fee obligations many years post-petition, and a "creditor" by definition holds a prepetition claim. 11 U.S.C. § 101(10).

The Former Partners, however, rely on the Bankruptcy Code's considerably broad definition of "claim" to establish that they each qualify as a "creditor." *See* 11 U.S.C. § 101(5) (defining "claim") and 101(10) (with exceptions not relevant here, defining "creditor" as "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"). Because the Debtor voluntarily filed a bankruptcy petition, the petition date is the date of the order for relief. 11 U.S.C. § 301(b). So, if the Former Partners held a claim against the Debtor that arose at or before the petition date, they qualify as creditors.

The definitions of "claim" and "creditor" do not require a debtor to schedule a right to payment, nor do they require a creditor to file a proof of claim, to meet the statutory definitions. The Bankruptcy Code separates the concept of a claim's existence from its allowance, and

certainly a debtor cannot deprive a creditor of a right to payment by omitting the claim from the schedules. *See, e.g.,* 11 U.S.C. §§ 502(a) (claims that are filed are deemed allowed) and 523(a)(3) (exception to discharge for unscheduled claims). An entity has a claim, or not, irrespective of any proof of claim, or the accuracy of a debtor's schedules. Therefore, the Debtor's failure to list the Former Partners on the bankruptcy schedules and the Former Partners' failure to file a proof of claim (despite their knowledge of the case) do not affect whether the Former Partners qualify as "creditors."

Rather, as the Former Partners cogently argue in their Reply, the definition of "claim" in § 101(5) is broad enough to include contingent and unliquidated claims for the Debtor's contribution to the costs of winding-up the partnership (under Michigan's Uniform Partnership Act and the partnership agreement). They explain that the Debtor's filing of the bankruptcy petition in 2008 automatically and as a matter of law "dissolved" the partnership, M.C.L. § 449.31(5), and at that point created contingent claims against the Debtor for her share of the expenses of liquidating the dissolved partnership. *See* Reply at pp. 2-4. The Former Partners' assertion that they are "creditors" within the meaning of § 101(10) is hardly fanciful.

Of course, as noted above, they did not file a proof of claim before the general bar date so their claim is not "allowed" and they will not participate in any distribution under the Plan.[2] Nevertheless, the court agrees with the Former Partners that they hold a "claim" that arose at the time of the bankruptcy filing, which makes them "creditors" under § 101(10). In fact, the $145,000.00 comprising their supposed substantial contribution claim actually represents the liquidation of a claim that arose "at the time of" the order for relief in the Debtor's case. Their theory is that they should not have been required to sue the Debtor (and incur fees) to force her to comply with her post-dissolution obligations under the partnership agreement and state law -- obligations that they correctly characterize as arising at or before the order for relief. The professional fees they incurred are part and parcel of their prepetition "claim," making them "creditors" under the Bankruptcy Code.

The next question is whether the Motion is timely under § 503(a). The parties agree that the Former Partners and the partnership did not file the Motion before the "Administrative Bar Date" which the Plan prescribed as the deadline or "last day" for filing an "Administrative Claim." The parties also agree that a claim for substantial contribution is an administrative claim. Indeed, the Plan defines the term "Administrative Claim" to include priority claims under § 503(b)[3] which undeniably encompasses claims for substantial contribution under § 503(b)(3) and related professional fees under § 503(b)(4). *See* Plan at Art. 1, § 1 (defining "Administrative Bar Date") and (2) (defining "Administrative Claim"). For this reason, at the hearing, the Former Partners' counsel argued that the Administrative Bar Date applies only to Administrative Claims in existence on the Effective Date of the Plan. The court rejects the argument.

---

[2] Creditors holding contingent and unliquidated claims may file proofs of claim, and the Bankruptcy Code authorizes the court to estimate them, upon request. 11 U.S.C. § 502(c).

[3] The Plan's definition of "Administrative Claim" incorrectly refers to priority under § 507(a)(1) (applicable to domestic support obligations) rather than § 507(a)(2) (applicable to expenses of administration). This is a harmless error probably due to the then-recent amendments to § 507(a) effected in 2005 under the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, § 1501(a), 119 Stat. 23 (2005). The court disregards harmless errors, such as the Plan's reference to § 507(a)(1), rather than (a)(2). Fed. R. Bankr. P. 9005.

As a policy matter, deadlines "prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992). The Former Partners' argument that the Plan's deadline for filing administrative claims does not apply to post-confirmation claims undermines finality and rewards inaction.

As a textual matter, the argument is unpersuasive under the Plan's definitional section, which makes no temporal distinctions between pre or post confirmation administrative claims. This definition reflects a plausible understanding of the effect of confirmation: even in an individual debtor's case, confirmation generally signals the end of the court's tutelage. For example, the property of the estate is usually (as here) re-vested in the "Reorganized Debtor;"[4] the debtor's obligation under the confirmed plan replaces pre-confirmation arrangements (as here); and the court's jurisdiction wanes, reflected (as here) in plan provisions specifying limited post-confirmation powers for enforcing or interpreting the plan or granting modest, ancillary relief. *See, e.g.,* Plan at Art. XIV (limiting court's jurisdiction at confirmation). Here, the Plan's terms naturally support the conclusion that after confirmation, although the case remains pending, the court's role, the composition of the bankruptcy estate, and bankruptcy administration more generally is practically, though not completely,[5] at an end. The Administrative Bar Date is a salient example of a plan term signaling diminished post-confirmation administration.

The Plan provides for full payment of all claims falling within the definition of Administrative Claim that are filed before the Administrative Bar Date – the "last day for filing Administrative Claims." *See* Plan at Art. 3, § 1(a). It also provides for payment of such claims on the Effective Date of the Plan (30 days after confirmation), or as otherwise agreed between the Debtor and the holder of the claim. This comports with the statutorily required treatment of administrative claims, as the court necessarily found when it confirmed the Plan. *See* 11 U.S.C. § 1129(a)(9)(A). It is not surprising that the Plan would impose a confirmation-related deadline for filing administrative claims, given the statutory requirement that, in general, such claims must be paid in full on the effective date of the plan. *Id.*

Indeed, this timing requirement in § 1129(a)(9)(A) of paying administrative claims promptly at confirmation similarly suggests that confirmation signals the end of case administration, the point after which no more administrative claims will arise. A natural, but narrow, construction of § 503(b) suggests that any contribution to a chapter 11 case, substantial or otherwise, must occur before confirmation to be compensable as an administrative expense. As noted above, the court is constrained to construe § 503(b) narrowly.

Moreover, the priming effect of allowing at this late date an administrative claim with priority under § 507(a)(2) undermines the expectations or reliance interests of other claimants,

---

[4] 11 U.S.C. § 1141(b) (property of estate presumptively vests in debtor at confirmation).

[5] Obviously, the court retains some jurisdiction under Article XIV of the Plan, the Debtor makes quarterly reports to the United States Trustee, and (because she is an individual) the bankruptcy estate continues to receive property described in § 1115, notwithstanding the re-vesting that occurs under Article VII. Significantly, as an individual chapter 11 debtor, the Debtor will not receive the benefits of discharge unless and until she completes payments under the Plan.

including taxing authorities and other creditors -- reliance fostered by the confirmation process itself.

Obviously, the confirmation process includes the statutory requirement of providing adequate information before confirmation to permit creditors to make a reasoned decision about whether to accept or reject the plan as proposed. 11 U.S.C. § 1125(a). Here, in fact, the court-approved disclosure statement, filed in late October 2010, estimated the amount of administrative claims at $20,650.00, indicating that administrative claimants would be paid in cash and in full on the Effective Date. *See* Disclosure Statement at pp. 7-9. Moreover, the Disclosure Statement advised that the future (*i.e.*, post-confirmation) fees of Debtor's professionals, which would ordinarily constitute the lion's share of administrative expenses, would be paid from the Debtor's post-confirmation revenues, rather than as an administrative expense under the Plan. The whole point of the Disclosure Statement is to induce creditor reliance based on court-approved disclosures, or in the words of the statute, to permit interested parties "to make an informed judgment about the plan" before deciding whether to accept or reject it. In this case, the Internal Revenue Service and the Michigan Treasury both accepted the Plan, presumably after evaluating the Disclosure Statement and predicting their likely recovery under the Plan through distributions that the Debtor would make after paying the circumscribed universe of "Administrative Claims" in full. *See* ECF Nos. 168, 169, 171, 172 and 173 (confirmation ballots of taxing authorities accepting Plan). Although the Plan contemplates that some claims falling within the definition of Administrative Claims will arise after confirmation (such as expenses incurred in implementing and consummating the Plan), every post-confirmation Administrative Claim would be untimely and would not be paid as a priority claim.

After confirmation, when administration of the estate typically comes to its natural conclusion, it makes sense that the Plan would leave post-confirmation claims to be addressed by applicable non-bankruptcy law. The interpretation is consistent with the Plan language and § 503(a), and reflects the consequences of confirmation described above.

Moreover, interpreting the Plan to permit the Former Partners to recover the wind-up claim against the Debtor as a priority claim under §§ 503(b)(3) and 507(a)(2) would also (i) flout the Order dated March 1, 2010 which set May 1, 2011 as the "Bar Date" for non-governmental entities to file general unsecured claims; and (ii) undermine the core bankruptcy principle of *pro rata* distribution embodied in the Bankruptcy Code generally, and the Plan's distribution article more specifically. The Former Partners may have incurred the obligation to pay their counsel post-petition, but as they argued in their Reply, this claim must be treated as a prepetition claim -- otherwise they wouldn't qualify as creditors. In other words, their substantial attorney fees simply represent the post-petition liquidation of their prepetition claim. Allowing the Former Partners to transform their general unsecured claim (with last priority under the Plan) into an administrative priority claim (with first priority) is anathema to the Plan and ordinary bankruptcy practice and principles, and hardly justifies an interpretation of the Plan that allows a supposed substantial contribution claim many years after two court-approved bar dates.

Rather than contort the Plan in the manner the Former Partners propose, it makes more sense to apply the American Rule under which each party in litigation must bear its own litigation expense, absent a contractual term or "specific and explicit provisions for the allowance of

attorneys' fees under selected statutes." *Baker Botts L.L.P. v. ASARCO LLC,* 135 S. Ct. 2158, 2164 (2015). As *Baker Botts* makes clear, the American Rule applies as strictly in bankruptcy cases as in other civil proceedings, perhaps more so given the effect that fee shifting may have on creditors and other claimants. And, the only statutory basis for awarding fees in this case -- § 503(b)(4) -- when construed narrowly in connection with the Plan, is not sufficiently "specific and explicit" to shift the fees to the Debtor. Incidentally, the state court award did not shift fees.

The court struggles to find in the authorities cited by the Former Partners any case awarding a substantial contribution claim post-confirmation to a creditor who did not meaningfully participate in the case until filing the request under § 503(b)(3)(D) and (b)(4). This probably reflects the fact that confirmation generally brings the administration of a chapter 11 case to an end. It is not unreasonable, then, to interpret § 503(b)(3) and (b)(4) to encourage early, pre-confirmation participation, before the confirmed plan binds all interested parties whose expectations have been set to a considerable extent by the confirmation process, including court-approved disclosures and plan-related negotiations. 11 U.S.C. §§ 1125(disclosures) and 1141(a) (effect of confirmation). The court will not interpret the Plan or § 503(b)(3) in a manner that turns statutory priorities upside down, ignores firm deadlines, and upsets reasonable, statutorily-induced expectations by rewarding creditors who failed to participate in the proceeding at the expense of others who did.

Therefore, the Motion is untimely, and the court will deny it without putting the parties to the expense of discovery and an evidentiary hearing.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Myra S. Seaman, Perry G. Pastula, Esq., Marc M. Bakst, Esq., Darren J. Burmania, Esq., Michael S. Hill, Esq., Lauren E. Hume, Esq., and Dean E. Rietberg, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated September 6, 2018**

Scott W. Dales
United States Bankruptcy Judge